IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ROBERTO CANO-RODRIGUEZ**,

   Plaintiff,

   v.

**NARCISO DE JESUS-CARDONA**, *et al.*,

   Defendants.

Civil No. 14-1284 (BJM)

## OPINION AND ORDER

Roberto Cano-Rodriguez ("Cano") brought this § 1983 action against Cesar Miranda Rodriguez in his official capacity as the Secretary of Justice of the Commonwealth of Puerto Rico, Jose Negron Fernandez ("Negron") in his official capacity as Secretary of the Puerto Rico Department of Corrections and Rehabilitation ("DCR"), and Narciso De Jesus-Cardona ("De Jesus-Cardona") (collectively, "defendants"), alleging political discrimination in violation of the First Amendment and violation of the Due Process Clause of the Fifth and Fourteenth Amendments.[1] Defendants previously moved to dismiss the complaint, and the court dismissed monetary claims against the Commonwealth of Puerto Rico; damages claims against the defendants in their official capacities; and claims alleging a deprivation of substantive due process and violation of the Fifth Amendment. Docket No. 14. Defendants moved for summary judgment, Docket No. 39, and Cano opposed, Docket No. 43. The case is before me on consent of the parties. Docket No. 34.

For the following reasons, the motion is **GRANTED.**

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] The complaint also alleged various state-law claims: Article II, Sections 1, 4, 6, and 7 of the Puerto Rico Constitution; and P.R. Laws Ann. tit. 29, § 137, which has been repealed.

Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record materials "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, it must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

**BACKGROUND**

Except where otherwise noted, the following facts are drawn from the parties' Local Rule 56[2] submissions.[3]

---

[2] Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." *CMI Capital Market Inv. v. Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for

Cano began working at the DCR in 1994, and served as the DCR's Regional Director of the Eastern Region ("regional director") before his termination in 2013.[4] SAMF ¶¶ 1, 11. He is a Republican, is a member of the New Progressive Party ("NPP"), and was the coordinator of an NPP-affiliated organization, "Civil Servants with Fortuño," at the DCR. SAMF ¶ 2.

In 2009, Cano was appointed to the regional director position and replaced De Jesus-Cardona, a member of the Popular Democratic Party ("PDP"). SUMF ¶¶ 4–5. Cano testified that in 2012 he had a three-month romantic relationship with Sandra Polanco-Román ("Polanco"), a social penal specialist who worked at the DCR's Guayama 500 institution. SAMF ¶ 7. During their relationship, Cano sent Polanco a picture of himself in his underwear. SUMF ¶¶ 2–3; OSMF ¶¶ 2–3. Also during their relationship, Polanco asked Cano to authorize her transfer from the Guayama 500 institution to the Guayama 296 institution, where she previously worked. SAMF ¶ 8. Believing it would violate "the electoral ban,"[5] Cano declined to authorize the transfer. SAMF ¶ 8.

The 2012 gubernatorial election for Puerto Rico was held on November 6, 2012, and the PDP candidate, Alejandro Garcia Padilla, won the election.[6] Two to three days after the election, Polanco ended her relationship with Cano and their interactions ceased at that time. SAMF ¶¶ 9–10. On November 15, 2012, Polanco filed with the DCR a

---

summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record that the movant contends are uncontested and material. D.P.R. Civ. R. 56(b), (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. *Id.* 56(c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.* 56(c).

[3] Defendants' statement of uncontested material facts ("SUMF"), Docket No. 39-6, Cano's opposing statement of material facts ("OSMF"), Docket No. 43-1, and Cano's additional statement of material facts ("SAMF), Docket No. 43-1. Defendants did not file a reply statement of material facts.

[4] Around the same time he was terminated, Cano was transferred to the Lieutenant II position. Compl. ¶ 39.

[5] An electoral ban period prohibits "certain public service personnel transactions" within a specified time period before and after an election. *See Colon-Santiago v. Rosario*, 438 F.3d 101, 104 (1st Cir. 2006).

[6] I take judicial notice of these facts.

sexual harassment complaint, accusing Cano of sending her a picture of himself in his underwear, accosting her, and making sexually charged comments. SUMF ¶ 1; OSMF ¶ 1. On April 10, 2013, Cano received a letter stating that the DCR intended to terminate him due to Polanco's sexual harassment complaint. SUMF ¶ 4; OSMF ¶ 4; Docket No. 39-1.[7] This decision was made by DCR's Secretary, Negron, whose signature appears on the letter. Docket No. 39-1. A few days later, Cano requested an administrative hearing to contest Negron's decision. SUMF ¶ 6; OSMF ¶ 6; Docket No. 39-2.[8] On May 6, 2013, a hearing officer confirmed the decision to terminate Cano. SUMF ¶ 8; OSMF ¶ 8; Docket No. 39-3.[9]

On May 21, 2013, De Jesus-Cardona called Cano and asked him to pick up his termination letter at the DCR's central headquarters. Docket No. 39-5, Cano Dep. 16:8–11, 35:1–20, 37:17–22. When Cano did so, De Jesus-Cardona told him that: (1) in 2009 he had been replaced by Cano for political reasons; (2) he did everything possible, with DCR's Secretary, Negron, to dismiss Cano; and (3) that Cano was dismissed because he was a Republican and member of the NPP.[10] *See* Cano Dep. 14:1–11, 25:13–17.

Cano appealed his dismissal to the Investigative, Processing, and Appeals Committee ("CIPA") of Puerto Rico, and CIPA determined that Cano should be reinstated. Docket No. 47-1 at 4–5. CIPA decided so because the DCR failed to produce Polanco, as she allegedly left Puerto Rico to reside elsewhere. *Id.* CIPA later reversed its decision, but the Puerto Rico Court of Appeals held that CIPA had correctly decided the case the first time and ordered Cano reinstated. *Id.* at 17–18. Defendants informed the

---

[7] A translation of the letter is available at Docket No. 62-1.
[8] A translation of the request for an informal administrative hearing is available at Docket No. 62-2.
[9] A translation of the hearing officer's report is available at Docket No. 62-3.
[10] I note that Cano first said De Jesus-Cardona made the comments above on April 11, 2013, and later clarified that the comments were made on May 21, 2013. *See* Cano Dep. 13:16–25, 14:1–11, 25:13–17.

court that DCR is in the process of reinstating Cano, and Cano has informed the court that his request for reinstatement is moot. Docket Nos. 56, 61.

## DISCUSSION

Defendants contend that they had no knowledge of Cano's political affiliation, that it was not a substantial or motivating factor for his termination, and that he would have been terminated in any event for nondiscriminatory reasons. Cano contends that he was dismissed because of his political affiliation, and genuine disputes of material fact allow his claims to survive summary judgment.[11]

### I.  Political Discrimination

"To the victor belong only those spoils that may be constitutionally obtained." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 64 (1990). The First Amendment shields government employees who are not in policymaking positions of confidence from adverse employment decisions based on their political affiliations. *Borges Colon v. Roman-Abreu*, 438 F.3d 1, 14 (1st Cir. 2006). Section 1983 provides a procedural mechanism for enforcing constitutional rights, *Albright v. Oliver*, 510 U.S. 266, 271 (1994), and so it "is the conventional vehicle through which relief is sought for claims of political discrimination by state actors." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013).

A plaintiff seeking to establish a prima facie case of political discrimination has the burden of establishing four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." *Ocasio–Hernández*, 640 F.3d at 13 (quoting *Lamboy–Ortiz v. Ortiz–Vélez*, 630 F.3d 228, 239 (1st Cir. 2010)).

---

[11] Although Cano was transferred from the regional director position to the Lieutenant II position, he challenges only his dismissal from the DCR and does not allege that he was improperly demoted.

That burden satisfied, "the burden then shifts to the defendants to show that "(i) they would have taken the same action in any event; and (ii) they would have taken such action for reasons that are not unconstitutional." *Vélez–Rivera v. Agosto–Alicea*, 437 F.3d 145, 152 (1st Cir. 2006) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286–87 (1977) (*Mt. Healthy*)). To make this showing, the defendant must persuade the factfinder it would have made the same decision even if the illegitimate reason had not been a factor. *See Welch v. Ciampa*, 542 F.3d 927, 941 (1st Cir. 2008); *Padilla–García v. Guillermo Rodriguez*, 212 F.3d 69, 77–78 (1st Cir. 2000).

For the purposes of this motion, defendants do not contest that they and Cano have opposing political affiliations and that Cano suffered an adverse employment action when he was terminated. They contend, however, that they were unaware of Cano's political affiliation and that his political affiliation was not a substantial or motivating factor for his termination.

## II.    Knowledge of Cano's Political Affiliation

Cano faults defendants for not coming forward with evidence negating their awareness of his political affiliation. Pl.'s Opp'n 10. But the burden of establishing at trial that each defendant knew his political affiliation rests with Cano, not the defendants. *See, e.g.*, *Acevedo-Diaz v. Aponte*, 1 F.3d 62, 67 (1st Cir. 1993) (in "a First Amendment political discrimination claim, the *burden of persuasion itself passes to the defendant-employer* once the plaintiff produces sufficient evidence from which the fact finder reasonably can infer that the plaintiff's protected conduct was a 'substantial' or 'motivating' factor behind her dismissal"). Accordingly, defendants may (and do) simply "point out" that Cano lacks sufficient evidence to establish that either Negron or De Jesus-Cardona knew his political affiliation. *Celotex Corp.*, 477 U.S. at 325 ("the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case").

The First Circuit considered a case similar to the one here in *Del Toro Pacheco v. Pereira*, 633 F.3d 57 (1st Cir. 2011) (*Del Toro*). In that case, Del Toro claimed he was terminated from his position at the DCR's special arrest unit (SAU) because the director of that unit, Izquierdo, and the DCR's Secretary, Pereira, disagreed with Del Toro's affiliation with the NPP. *Id.* at 58. The court held there was a genuine dispute of material fact as to whether Izquierdo knew Del Toro's political affiliation. *Id.* at 63. It held so because Izquierdo denied any such knowledge and that denial conflicted with the evidence Del Toro submitted—that Izquierdo gave Del Toro poor evaluations and made various comments urging and pressuring him to become a PDP member. *Id.*

On the other hand, Del Toro failed to establish a prima facie case against Pereira because he admitted that he did not know Pereira, that they never discussed politics, and that Pereira was included in the complaint due to his position as secretary of the DCR. *Id.* at 62. And although Del Toro was an escort for a former NPP governor, a position that suggested to others his political affiliation, he did not allege Pereira knew that he held that position. *Id.* at 63.

As in *Del Toro*, while there is a genuine dispute of material fact as to whether De Jesus-Cardona knew Cano's political affiliation, there is insufficient evidence that DCR's Secretary, Negron—the person who made the decision to terminate Cano—had the requisite knowledge. Cano testified that he is a Republican, is a well-known NPP member, and was the coordinator of an NPP-affiliated organization, "Civil Servants with Fortuño," at the DCR. SAMF ¶ 2. Because he was the coordinator of the NPP-affiliated organization, Cano claims everybody at the DCR knew his political affiliation. Although Cano seems to suggest the DCR is a "relatively small workplace where everyone kn[ows] who everyone else [is] and political affiliations are common office knowledge," *Peguero–Moronta v. Santiago*, 464 F.3d 29, 48 (1st Cir. 2006), there is insufficient evidence in the record to establish that is so. Indeed, *Del Toro* suggests the DCR is not such a workplace because it declined to find that DCR's Secretary knew Del Toro's political affiliation even

though the latter was an escort for a former NPP governor, a position that would suggest to others that Del Toro was affiliated with the NPP. 633 F.3d at 63 n.8.

To establish that De Jesus-Cardona knew his political affiliation, Cano testified that on May 21, 2013, De Jesus-Cardona told him that he was terminated because he is a Republican and member of the NPP. De Jesus-Cardona's deposition testimony submitted to the court does not, however, reveal that he knew Cano's political affiliation. While the record is sparse, a reasonably jury could find that De Jesus-Cardona knew Cano's affiliation with the NPP.

A reasonable jury could not similarly so find with respect to DCR' Secretary, Negron. The complaint states that Negron is the nominating authority at the DCR, Compl. ¶ 20; was the person who intended to dismiss Cano, *id.* ¶ 38; was the person who reassigned Cano from the regional director position to the Lieutenant II position, *id.* ¶ 39; was the person who placed De Jesus-Cardona in the regional director position, *id.* ¶ 46; and was the person who signed Cano's dismissal letter, *id.* ¶ 51. Notably, the complaint did not specifically allege that Negron knew Cano's political affiliation.

Moreover, Negron was not deposed in this case, and Cano does not claim that Negron made any statements to him or that he knew about Cano's position as the coordinator of the NPP-affiliated organization. What is more, Cano does not allege he has met Negron or that they have discussed each other's political affiliations. Cano exclusively relies on is his own sworn testimony that De Jesus-Cardona, the person who gave Cano the letter of dismissal on May 21, said that the dismissal was "his" revenge for displacing him from the regional director position in 2009. To the extent Cano contends he can use his own sworn testimony regarding De Jesus's Cardona's statements in order to establish Negron's knowledge, the First Circuit rejected a similar argument in *Del Toro*. *See Del Toro*, 633 F.3d at 63 n.8. (inadmissible hearsay where Del Toro attempted to establish Pereira's knowledge by relying on his own sworn statement that Izquierdo said, "Pereira knows that you filed a claim against us and that you are a member of the

NPP."). Thus, while a reasonable jury could find that De Jesus-Cardona knew Cano's political affiliation, there is insufficient evidence for a reasonable jury to so find with respect to Negron.

### III.   Substantial or Motivating Factor

To survive summary judgment, Cano must establish that his political affiliation was "at least a 'motivating factor' in the [DCR's] decision to dismiss him." *Vazquez v. Lopez-Rosario*, 134 F.3d 28, 36 (1st Cir. 1998) (quoting *LaRou v. Ridlon*, 98 F.3d 659, 661 (1st Cir. 1996)). Because "unsupported and speculative assertions regarding political discrimination will not be enough to survive summary judgment," he must point to admissible evidence in the record "which, if credited, would permit a rational fact finder to conclude that [his dismissal] stemmed from a politically based discriminatory animus." *Vazquez*, 134 F.3d at 36. In political patronage cases, "one rarely finds 'smoking gun' evidence." *Ocasio-Hernández*, 640 F.3d at 17 (quoting *Lamboy-Ortiz*, 630 F.3d at 240). For this reason, "circumstantial evidence must, at times, suffice." *Ocasio-Hernández*, 640 F.3d at 17.

A set of circumstances similar to the ones in this case were presented in *Del Toro*. 633 F.3d at 57. In that case, a woman accused Del Toro of raping her, and Del Toro told his supervisor, Izquierdo, about the accusation. *Id.* at 59. As is the case here, Del Toro denied the accusations and claimed that the woman accused him only after their consensual relationship ended. *Id.* at 59–60. Izquierdo relayed this information to individuals at the DCR, and an internal investigation ensued when a report about the accusations was delivered to DCR's Secretary, Pereira. *Id.* at 60. Thereafter, Pereira sent Del Toro a letter outlining the results of an internal investigation and stating that Del Toro was going to be terminated. *Id.* at 60–61. After unsuccessfully challenging that decision before a hearing officer and the CIPA, Del Toro was terminated. *Id.* at 61. Under these circumstances, the First Circuit held Del Toro failed to establish a prima facie case that

his political affiliation was a substantial or motivating factor behind the termination. *Id.* at 63.

As an initial matter, because Cano has failed to submit evidence from which a reasonable jury could infer that Negron was aware of his political affiliation, there is similarly insufficient evidence that Negron was "at least motivated" to terminate Cano on that basis. But even assuming, for the moment, that a reasonable jury could proceed to the fourth element of Cano's prima facie case, there is insufficient evidence that Negron was motivated to dismiss Cano on account of his political affiliation.

Although Cano homes in on De Jesus-Cardona's conduct, the record lacks evidence relating to Negron. As in *Del Toro*, this is problematic and fatal to Cano's prima facie case because Negron—not De Jesus-Cardona—made the decision to terminate Cano. *See Del Toro*, 633 F.3d at 63 ("the record reflects that it was Pereira [, DCR's Secretary,] who made the decision to fire [the DCR employee], not Izquierdo [, who was the employee's immediate supervisor]"). And to the extent Cano claims that De Jesus-Cardona was involved in the termination because he delivered the letter of dismissal, the First Circuit rejected such an attenuated connection in *Del Toro*. *Id.* (prima facie case not established where "Izquierdo stated that his only participation in the termination . . . was to serve as a witness to the delivery of Pereira's termination letter").

Moreover, Negron decided to terminate Cano only after an internal investigation and hearing officer determined that Polanco accused him of sexually harassing conduct. Cano nonetheless presses that the state administrative agency decided to reinstate him. A review of the administrative proceeding, however, reveals that CIPA determined that Cano should be reinstated because the DCR could not produce Polanco to testify. But even if the DCR was unable to sustain its case due to Polanco's unavailability, it does not automatically follow that Negron was motivated to terminate Cano on the basis of his political affiliation. Cano does not allege, for example, that in an effort to terminate him on account of his political affiliation, Polanco and Negron conspired to manufacture the

sexual harassment allegations, or that Negron "set in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 50 (1st Cir. 2009). And more importantly, for purposes of summary judgment, there is certainly no evidence—direct or circumstantial—of such things in the record.

Attempting to avoid summary adjudication, Cano hangs his hat on his own deposition testimony. As an initial matter, plaintiff's counsel mischaracterized the deposition testimony, stating Cano "declared that when he was appointed as Regional Director [in 2009] defendant De Jesus-Cardona . . . told him that he had lost his job as Regional Director because of him, and that he would do anything possible to have him removed from this position." SAMF ¶ 6. The record does not support this statement. After appearing to confuse both parties' counsel during his deposition, Cano made clear that it was on May 21, 2013—not in 2009—that De Jesus-Cardona told him that he worked with Negron to dismiss him due to his political affiliation. Docket No. 39-5, Cano Dep. 13:16–25, 14:1–11, 25:13–17. As noted above, to the extent Cano seeks to rely on his own deposition testimony to establish that De Jesus-Cardona said that Negron decided to terminate him because of his political affiliation, that reliance is misplaced. *See Del Toro*, 633 F.3d at 63 n.8.

And contrary to Cano's contention, the temporal proximity between Cano's termination in May 2013 and the 2012 gubernatorial election does not suggest a discriminatory animus. *See Peguero-Moronta v. Santiago*, 464 F.3d 29, 53 (1st Cir. 2006) ("The temporal proximity between a change in political administrations and an adverse employment action is relevant to the issue of whether political affiliation was a substantial or motivating factor in the adverse employment decision"). Because Cano has

failed to establish a prima facie case of political discrimination, summary judgment is granted on those claims.[12]

To be sure, even if Cano had established a prima facie of political discrimination, his claim would ultimately fail because of the defendants' *Mt. Healthy* defense. *See Mt. Healthy*, 429 U.S. at 286–87. As noted above, when Negron dismissed Cano, he relied on the result of the internal investigation: that Cano sexually harassed Polanco. Even assuming, for the moment, that Negron had some inclination to inflict an adverse action against Cano on account of his political affiliation, "the only reasonable interpretation of the evidence" is that Cano would have been dismissed in any event because of the result of the internal sexual harassment investigation. *Reyes-Orta v. P.R. Highway & Transp. Auth.*, 811 F.3d 67, 74 (1st Cir. 2016). Thus, summary judgment is granted on Cano's political discrimination claims against all defendants.

### IV.    Remaining Claims

Cano's complaint alleged the DCR deprived him of due process when it terminated him. The court previously dismissed any Fifth Amendment and substantive due process claims. Docket No. 14. In their motion for summary judgment, defendants argue Cano is unable to establish a Fourteenth Amendment procedural due process claim. Cano made no effort to respond to that argument, and so he has waived that claim. *Muniz-Cabrero v. Ruiz*, 23 F.3d 607, 609 (1st Cir. 1994) ("A party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal."). The complaint also alleges various state-law claims. Because summary judgment is proper on Cano's federal claims, I decline to

---

[12] Although there is a genuine dispute of material fact as to whether De Jesus-Cardona knew Cano's political affiliation, Cano's prima facie case against De Jesus-Cardona also fails. This is so because the only adverse action alleged is Cano's dismissal, and it is undisputed that De Jesus-Cardona was not the person who made that decision.

exercise jurisdiction over his ancillary state-law claims, and so they are dismissed. 28 U.S.C. § 1367(c).

## CONCLUSION

For the foregoing reasons, summary judgment is **GRANTED**. All federal claims against all the defendants are **DISMISSED WITH PREJUDICE**, and all state-law claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of March 2016.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge